UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JAMES MCLAUGHLIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20-cv-00158-JDL |
| | ) |
| **CITY OF BANGOR,** | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, James McLaughlin, alleges that the City of Bangor (the "City") discriminated against him based on his age during the 2018 hiring process for a Collection System Technician position, in violation of the Age Discrimination in Employment Act ("ADEA") and the Maine Human Rights Act ("MHRA").[1]

The City has moved for summary judgment (ECF No. 54), arguing: (1) that there is no direct evidence that the City's decision not to hire McLaughlin was motivated by age-based discriminatory animus; (2) that McLaughlin cannot establish a prima facie case of discrimination under the *McDonnell Douglas* framework; and (3) even if he can, the City had a legitimate, non-discriminatory reason for its decision not to hire McLaughlin and McLaughlin cannot show that this reason was pretextual. McLaughlin argues in response (ECF No. 61-1) that there are triable issues of fact with respect to both direct evidence of discriminatory animus and the *McDonnell*

---

[1] This opinion is SEALED until 4:00 p.m. on January 19, 2022 to give the parties an opportunity to notify the Court, by sealed filings, whether any portion(s) need to be redacted because of confidentiality restrictions.

1

*Douglas* factors such that summary judgment should not be granted. For the reasons detailed below, I deny the City's motion.

## I. FACTUAL BACKGROUND

The following facts are drawn from the parties' separate statements of fact. *See* ECF Nos. 55 (the City), 63-1 (McLaughlin). They represent all properly asserted statements of material fact, both admitted and denied, assessed in the light most favorable to the Plaintiff as the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" (alteration omitted) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam))). It bears emphasis that many of the facts that follow are in dispute.

The City is a municipality located in Penobscot County, Maine. McLaughlin was 58 years old in August and September of 2018 and had worked for the City since June 1, 1987, as a Heavy Equipment Operator within the City's Department of Public Works. In 2018, McLaughlin applied for the entry-level position of Collection System Technician in response to an August posting advertising the job internally and externally. The City maintains a written selection policy that prohibits discrimination based on age and other protected characteristics and employs a policy of hiring the best qualified applicant for a vacant position, giving first consideration to internal candidates.

The Collection System Technician position is housed within the City's Department of Water Quality Management's Sewer Department (also referred to as the Collection System). In August 2018, James Grant was the Collection System

Foreman, responsible for supervising Collection System Technicians. Grant began attending interviews for open Collection System positions in 2016, and prior to September 2018 asked questions during these interviews from a pre-prepared script. Following interviews conducted from 2016 to 2017, and at least once in 2018, Grant participated in post-interview discussions and made hiring recommendations for the Collection System Technician position. Galen "Chip" Swan was the Collection System Manager at the time and was responsible for planning, directing, and overseeing the operation of the Collection System, including hiring personnel. Amanda Smith was hired into the newly created position of Assistant Director of Water Quality Management in July 2018, assisting Andrew Rudzinski, Director of Water Quality Management, with the oversight of the Department of Water Quality Management.

**A.     Grant's Comments**

Approximately a week after McLaughlin applied for the Collection System Technician position, McLaughlin discussed his application with Grant. Grant informed McLaughlin that he knew McLaughlin was planning to apply. Grant told McLaughlin: "It's a young man's job. You're too old for that." Grant also said, "I'm going to hire a younger person." Based on these conversations, McLaughlin believed that Grant had authority over hiring for the position.

Eric Lundin, a now-former Collection System Technician, attended an end-of-day gathering with Grant, Swan, and the other Collection System Technicians at which Grant stated, "We're not hiring Jim McLaughlin, he's washed up, he's too old." Lundin observed Grant make a gesture that Lundin interpreted as Grant mimicking the act of ripping up an application. Then Grant looked at Swan, who laughed and

3

nodded as if in agreement with the comment and gesture. Neither party specified the date of this gathering, but the undisputed facts show that Lundin worked in the Sewer Department in August and early September 2018 and then transferred to a different job sometime in September 2018. Lundin also heard Grant say, in the presence of several Collection Systems Technicians, "we're not hiring [Jim McLaughlin], we're not giving him a shot."

Ronald Leger, who worked for the City's Public Works Department as Head Custodian and Dispatcher in 2018, heard a conversation between McLaughlin and Grant that took place approximately two weeks after McLaughlin submitted his application, in which McLaughlin inquired about interviews for the Collection System Technician position and Grant informed him that the interviews were done. After McLaughlin left the room, Leger recalls Grant telling him, "Well, would you hire him? Look at him, he's going to be gone in two years."

## B. McLaughlin's Application and Consideration for the Collection System Technician Position

Thirteen applications were submitted in response to the Collection System Technician posting, for which there were three openings. Swan received the applications from the Human Resources Department and forwarded them in an email to Grant, with copies to Rudzinski and Smith, on August 29, 2018. In the email, Swan indicated that there were two openings (the third vacancy arose later), that he had picked six applicants to interview, and that the email's recipients should also pick six so that Swan and the recipients could compare lists. None of the three recipients responded to the email in writing.

Swan and Smith did not adhere to any written criteria for selecting candidates to interview for the job. Ultimately, McLaughlin was not offered an interview. Interviews for the position were conducted on September 6 and 10, 2018. Swan, Smith, Rudzinski, and Grant were all present for the interviews. Grant asked questions of the candidates, along with Rudzinski, Swan, and Smith. Once the interviews were completed, Rudzinski, Smith, and Swan met to determine who should be hired.

### C. McLaughlin's Later Hiring into the Collection System Technician Position

Vacancies for the Collection System Technician position continued to arise in the years following 2018. In the fall of 2020, McLaughlin applied for and was offered the job, and he was hired into the position on November 30, 2020.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92-93 (1st Cir. 2021). A court views the evidence in the light most favorable to the non-moving party when determining whether summary judgment should be granted. *Taite*, 999 F.3d at 92. "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muńoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)). To

prevail, the moving party must "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, "using 'evidentiary materials already on file demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" *Ocasio-Hernandez v. Fortuño-Burset*, 777 F.3d 1, 4-5 (1st Cir. 2015) (alteration omitted) (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)). A plaintiff opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019) (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). In doing so, "[t]he nonmovant must point to materials of evidentiary quality," *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018), and cannot rely on "mere allegation or denials" to sustain their burden, *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986)). The court must "proceed with caution and restraint when considering summary judgment motions where . . . issues of pretext, motive, and intent are in play." *Taite*, 999 F.3d at 93.

B.  Analysis

McLaughlin's complaint relies substantially on Grant's purported statements as proof that the City's decision not to interview McLaughlin was rooted in age-related animus. The City asserts that even if Grant made all of the statements attributed to him and they are admissible, Grant was not a decisionmaker for the Collection System Technician hiring process and, therefore, his statements cannot demonstrate animus on the part of the City. The City contends that Swan and Smith were the decisionmakers and that Grant and Rudzinski were merely observers in the

process, while McLaughlin maintains that Grant participated in the hiring process as a decisionmaker.

Thus, whether Grant's purported statements are admissible for purposes of summary judgment, and whether they provide direct evidence of age-related animus that can be attributed to the City, are central to resolution of the summary judgment motion. I proceed by (1) evaluating the City's argument that Grant's purported statements are inadmissible hearsay, and then (2) considering whether Grant's statements may serve as direct evidence of discrimination.

### 1. Whether Grant's Purported Statements Are Inadmissible Hearsay

"'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 12 (1st Cir. 2016) (quoting *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011)). The Federal Rules of Evidence allow statements that would otherwise be hearsay to be admitted against a party if they were made "by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). "Rule 801(d)(2)(D) does not contemplate . . . that the statement be shown to have been made by the employee at the instance of her employer, but only that the declarant's statement *concern* matters within the scope of her agency or employment." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094 (1st Cir. 1995) (citations omitted). "The employee's station within the organization is not relevant to the Rule 801(d)(2) analysis." *McDonough v. City of Quincy*, 452 F.3d 8, 21 (1st Cir. 2006). When the admissibility of a statement under Rule 801(d)(2) is

analyzed, "the statement must be considered but does not by itself establish . . . the existence or scope of the relationship." Fed. R. Evid. 801(d)(2).

The City argues that the speaker must be a decisionmaker for statements to be admissible under Rule 801(d)(2)(D). However, the standard for admission is more relaxed than the City contends, and the speaker does not need to be a decisionmaker for this purpose. In *Woodman*, the First Circuit determined that a supervisor's statements were admissible under Rule 801(d)(2)(D) because she acted within the scope of her employment in attending a discussion regarding future employee terminations and in subsequently making a comment regarding the same, even though she lacked authority to make termination decisions. 51 F.3d at 1093-94. Similarly, in *McDonough*, the First Circuit held that statements of the administrative assistant to the Chief of Police were admissible under Rule 801(d)(2)(D) because this individual was "involved in personnel management, and the statements related to a possible personnel action against [the plaintiff]." 452 F.3d at 21.

The City argues that McLaughlin's sole evidence supporting the admissibility of Grant's purported statements under 801(d)(2)(D) are the statements themselves. McLaughlin, however, points to additional facts showing that Grant participated in the hiring process for the Collection System Technician position through September 2018, that Grant was responsible for supervising Sewer Department Employees, and that Grant's comments related to McLaughlin's application for the Collection System Technician position. Further, undisputed facts show that in August and September 2018, Grant was the Collection System Manager, that he was involved in conversations with Swan and Smith regarding the open Collection System Technician

8

position, and that he received an email that attached all of the applications received for the position and was asked for his opinion on who should be interviewed. In addition, he participated in the in-person interviews. Thus, Grant was involved in personnel management regarding the open positions. His alleged statements related to the personnel matter of McLaughlin's employment application. At this stage of the proceeding, Grant's statements are admissible.

### 2. Whether McLaughlin Has Generated Genuine Issues of Material Fact on His Claim of Employment Discrimination in Violation of the ADEA and the MHRA

Under the ADEA, employers may not "fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 2021). The MHRA similarly prohibits age discrimination in employment, 5 M.R.S.A. § 4572 (West 2021), and is applied by Maine Courts in accordance with federal anti-discrimination law, *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 n.1 (1st Cir. 2007).

The plaintiff carries the burden of proving, through a preponderance of direct or circumstantial evidence, "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). "Direct evidence is evidence which, in and of itself, shows a discriminatory animus." *Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 51 (1st Cir. 2021) (quoting *Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir. 1990)). "If the plaintiff 'provides direct evidence of discrimination, the issue may be put to a finder of fact without further ado.'" *Id.* at 50 (quoting *Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling*

*Co.*, 152 F.3d 17, 24 (1st Cir. 1998)). If the plaintiff lacks direct evidence of discrimination, the court must apply the three-part *McDonnell Douglas* burden-shifting framework. *Woodman*, 51 F.3d at 1091.

McLaughlin asserts that he has presented sufficient factual allegations to show genuine issues of material fact as to whether there is direct evidence of age discrimination through Grant's purported statements, as well as circumstantial evidence to satisfy the *McDonnell Douglas* analysis. Because the existence of a genuine dispute of material fact regarding direct evidence of age discrimination may be dispositive of a summary judgment motion, I address this contention first.

### a. Direct Evidence of Age Discrimination

The parties dispute whether Grant, who is alleged to have made age-related remarks about McLaughlin, was a decisionmaker for the Collection System Technician position such that his statements constitute direct evidence of age-based animus.

Generally, direct evidence is limited to statements "by a decisionmaker that directly reflect the alleged animus and *bear squarely on the contested employment decision.*" *Putnam v. Reg'l Sch. Unit 50*, No. 1:14-cv-00154, 2015 WL 5440783, at *24 (D. Me. Sept. 15, 2015) (quoting *Vesprini v. Shaw Cont. Flooring Servs.*, 315 F.3d 37, 41 (1st Cir. 2002)). These statements must have a temporal relationship to the challenged employment action to support a reasonable inference "that there existed a causal relationship between the remarks and the subsequent decisionmaking by the employer." *Id.* (alteration omitted). Not all age-related remarks are evidence of an ADEA violation, as "'stray workplace remarks,' as well as statements made either

10

by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *Meléndez v. Autergermana, Inc.*, 622 F.3d 46, 54 (1st Cir. 2010) (quoting *González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002)).

Thus, although Grant need not have been a decisionmaker for his purported statements to be admissible, the analysis is different with respect to the question of whether McLaughlin has demonstrated a genuine question of material fact as to the existence of direct evidence of age-based discrimination. To overcome the City's motion for summary judgment, McLaughlin must show that a reasonable jury could conclude that Grant was a decisionmaker and his age-based animus was causally linked to the decision not to hire McLaughlin. I conclude that he has made this showing, for the following reasons.

McLaughlin argues that the parties' dispute over whether Grant made all of the alleged statements, and whether Grant was a decisionmaker for the Collection System Technician position in August and September of 2018, preclude summary judgment. McLaughlin identifies five purported statements by Grant that, McLaughlin argues, provide direct evidence of age-based animus:

- **Statement 1**: When McLaughlin told Grant he applied for the technician opening, Grant said: "It's a young man's job. You're too old for that." ECF 63-1 ¶¶ 49-50.

- **Statement 2**: Grant told McLaughlin he was too old for the job and stated: "I'm going to hire a younger person." ECF No. 63-1 ¶ 50.

- **Statement 3**: In front of Sewer Department crew and Swan, Grant stated: "We're not hiring Jim McLaughlin, he's washed up, he's too old" and gestured as if ripping up an application. ECF No. 63-1 ¶ 55.

11

- **Statement 4**: Grant stated to Sewer employees that "we're not hiring [Jim McLaughlin], we're not giving him a shot." ECF No. 63-1 ¶ 100.

- **Statement 5**: After McLaughlin asked Grant about when he would be interviewed, and Grant responded that "we're done, it's closed," Grant told Leger, "Well, would you hire him? Look at him, he's going to be gone in two years." ECF No. 63-1 ¶ 60; ¶¶ 101, 102, 104

In response, the City attempts to thread the needle by disputing that Grant made the second, fourth, and fifth statements while also arguing that whether Grant made these disputed statements is immaterial. This argument is unconvincing, especially because the Court must construe the evidence in the light most favorable to McLaughlin. Grant's purported statements reflect age-based animus and convey that he was a decisionmaker in the hiring process for the Collection System Technician position. Consequently, based on these statements alone, a jury could reasonably conclude that the City's decision not to hire McLaughlin for the Collection System Technician job was rooted in age-based animus. Additionally, a reasonable jury could find these statements constituted a pattern and were not a mere collection of stray remarks.

McLaughlin also argues that a reasonable jury could determine that Grant was a decisionmaker because: (1) as Foreman of the Sewer Department, Grant had supervisory responsibility over Collection System Technicians; (2) in 2018, when McLaughlin applied for the Collection System Technician position, Swan sent Grant the applications and asked him to select six people to be interviewed; (3) Grant participated in the Collection System Technician interviews in September 2018; (4) Grant participated in interviews held in connection with Collection System Technician vacancies from 2016 to September 2018; and (5) prior to Smith's hire in

12

2018, Grant participated in post-interview discussions regarding applicants and made recommendations as to who to hire as Collection System Technicians.

Thus, a reasonable jury could conclude from Grant's purported statements and from the additional facts regarding his supervisory position with the Collection System that Grant was a decisionmaker for the Collection System Technician job. The inquiry then turns to whether a reasonable jury could find a causal connection between the age-related animus and the hiring decision. On the face of the statements, there is a causal connection between age-related animus and the decision not to interview or hire McLaughlin, as evinced most clearly in Grant's alleged comment to McLaughlin that McLaughlin was too old for the job and Grant would hire someone younger. There is also a temporal connection between Grant's purported statements and the hiring decision. Viewing the facts in the light most favorable to McLaughlin, Grant's multiple purported statements were made during the time-period between McLaughlin's submission of his application and the decision not to interview him.

*Zampierollo-Rheinfeldt* provides support for concluding in this case that there is a causal connection between age-related animus and the City's decision not to interview or hire McLaughlin. *See* 999 F.3d 37. In *Zampierollo-Rheinfeldt*, a fifty-five-year-old employee was terminated after his manager, who made the termination decision, stated that the plaintiff's position was eliminated because he wanted to "rejuvenate" the team. *Id.* at 52. The First Circuit determined that a reasonable jury could view this statement as an admission that the plaintiff's employment was terminated because of his age. *Id.* The City argues that *Zampierollo-Rheinfeldt* is

13

distinguishable because Grant, unlike the supervisor in *Zampierollo-Rheinfeldt*, was not the sole decisionmaker (and, the City argues, was not a decisionmaker regarding the Collection System Technician position at all). Although it was clearer in *Zampierollo-Rheinfeldt* that the statements showing age-related animus were made by a key managerial employee who was unquestionably the decisionmaker, that does not negate the existence of sufficient disputed facts here as to whether Grant was a decisionmaker. Additionally, Grant's purported statements were more clearly rooted in age-based animus than the supervisor's statements in *Zampierollo-Rheinfeldt*.

Grant's purported statements clearly demonstrate age-based animus and, reading the record in the light most favorable to McLaughlin, there is a genuine dispute as to whether Grant was a decisionmaker. It follows that if Grant was a decisionmaker, then these statements may serve as direct evidence of discriminatory animus sufficient to support a finding that the ADEA and MHRA were violated. The purported statements are also temporally linked to the hiring decision, and a reasonable jury could find a causal connection between the animus and the decision not to interview and hire McLaughlin.

Setting Grant's decisionmaker status aside, McLaughlin also puts forth factual allegations that Swan, who undeniably was a decisionmaker, laughed and nodded after Grant stated, "We're not hiring Jim McLaughlin, he's washed up, he's too old." The City denies this. This dispute is material because if Swan's response is deemed an adoptive admission of Grant's purported statements, it also could lead a reasonable jury to conclude that Swan's decision not to hire McLaughlin was rooted in age-based animus.

14

Thus, the City is not entitled to summary judgment on McLaughlin's claim of direct discrimination.

### III.  CONCLUSION

For the foregoing reasons, I conclude that McLaughlin has produced specific facts "sufficient to deflect the swing of the summary judgment scythe." *Miceli*, 914 F.3d at 81 (quoting *Mulvihill*, 335 F.3d at 19). The City is, therefore, not entitled to summary judgment, and I do not reach the parties' additional arguments regarding the *McDonnell Douglas* burden-shifting framework.

It is **ORDERED** that the City of Bangor's Motion for Summary Judgment (ECF No. 54) is **DENIED**.

**SO ORDERED.**

**Dated: January 13, 2022.**

                                                                      **/s/ JON D. LEVY**
                                            **CHIEF U.S. DISTRICT JUDGE**